In the

# United States Court of Appeals
### For the Seventh Circuit

———

Nos. 01-3281 and 01-3282

JOSEPH L. TRUEBLOOD,

*Petitioner-Appellee,*
*Cross-Appellant,*

v.

CECIL DAVIS,

*Respondent-Appellant,*
*Cross-Appellee.*

———

Appeals from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 00 C 125—**Allen Sharp**, *Judge.*

———

ARGUED APRIL 24, 2002—DECIDED AUGUST 20, 2002

———

Before POSNER, RIPPLE, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* The petitioner was sentenced to death and after exhausting his state remedies, see *Trueblood v. State*, 587 N.E.2d 105 (Ind. 1992), 715 N.E.2d 1242 (Ind. 1999), sought and obtained federal habeas corpus. *Trueblood v. Anderson*, 156 F. Supp. 2d 1056 (N.D. Ind. 2001). His state custodian appeals.

Upset that his former girlfriend was planning to return to her ex-husband, the petitioner took a gun from his parents' house, picked up the woman and her two children,

who were aged two and a half years and 17 months respectively, in his automobile, shot all three in the head, killing them, then borrowed a shovel from his brother and buried his three victims in a secluded spot. Charged in an Indiana state court with all three murders, he pleaded guilty to murdering the mother but decided to stand trial for the murder of the children. The theory of the defense was that the mother had shot her children and that he then at her request had killed her, a kind of mercy killing. The strategy collapsed when his brother took the stand and testified that the petitioner had confessed all three murders to him. The petitioner then interrupted the trial and pleaded guilty to murdering the children; he did this in order to avoid a jury recommendation of the death penalty. The judge nevertheless sentenced him to death, as he was authorized by Indiana's death-penalty law to do, Ind. Code § 35-50-2-9(d) ("if the trial was to the court, or the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing"); *Smith v. State*, 686 N.E.2d 1264, 1271 n. 3 (Ind. 1997), upon a finding of one or more statutory aggravating circumstances. The judge found two—murder of more than one person and a victim (in fact two victims) under the age of 12. Ind. Code §§ 35-50-2-9(b)(8), (12); *Stevens v. State*, 691 N.E.2d 412, 432-33 (Ind. 1997); *Holmes v. State*, 671 N.E.2d 841, 852 (Ind. 1996); *Harrison v. State*, 659 N.E.2d 480, 481-82 (Ind. 1995); *Trueblood v. State, supra*, 587 N.E.2d at 111 and n. 7. The federal district judge in the habeas corpus proceeding rejected some of the petitioner's challenges to the sentence, precipitating a cross-appeal by him. There was no need for the petitioner to file a cross-appeal, since he was not seeking to alter the judgment but merely defending it on additional grounds.

The district judge based his grant of relief on a determination that the Indiana courts had in three respects

unreasonably applied U.S. Supreme Court precedent, which is the statutory standard for habeas corpus for state prisoners. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 409, 412 (2000); *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). The first involved the failure of the state trial judge to inform the petitioner explicitly that by pleading guilt to the murder of the mother he was acknowledging the existence of an aggravating circumstance (namely an additional murder victim) if he was later convicted of murdering either or both of the children and the state sought, as undoubtedly it would, and as in fact it did, the death penalty.

Due process as interpreted by the Supreme Court requires that a defendant be advised of the consequences of pleading guilty. *Mabry v. Johnson*, 467 U.S. 504, 509 (1984); *Brady v. United States*, 397 U.S. 742, 755 (1970). Not necessarily *all* the consequences, such as loss of the right to vote or of the right to own a gun, or the effect on future sentences, *Lewis v. United States*, 902 F.2d 576, 577 (7th Cir. 1990); *United States v. George*, 869 F.2d 333, 337 (7th Cir. 1989); *United States v. Edwards*, 911 F.2d 1031, 1035 (5th Cir. 1990); *United States v. Del Rosario*, 902 F.2d 55, 59 (D.C. Cir. 1990), but certainly the maximum punishment that he faces if he is convicted in the case at hand. *United States v. Lumpkins*, 845 F.2d 1444, 1449 (7th Cir. 1988); *Lewellyn v. Wainwright*, 593 F.2d 15, 17 (5th Cir. 1979) (per curiam).

The petitioner in our case was told that he might be sentenced to death for the murder of the children. See *Thomas v. United States*, 27 F.3d 321, 325 (8th Cir. 1994); *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). What he was not told was that his conviction (pursuant to his plea of guilty) of the murder of the mother would be an aggravating circumstance if he were convicted of murdering the

children as well and the death penalty were sought for those murders. But the only case we have found that decides whether a defendant's guilty plea was involuntary because he was not informed that the state could use the resulting conviction as an aggravating circumstance in the sentencing for an unrelated but pending murder charge holds that the plea is not involuntary. *King v. Dutton, supra*, 17 F.3d at 152-55.

No decision by the U.S. Supreme Court casts doubt on the soundness of *King*, and it is applicable with particular force here because the petitioner could not have suffered any prejudice from his plea, making its consequences for his sentence for the other murders academic. It is not, so far as matters in this case at any rate, a guilty plea or even a conviction that makes a murder an aggravating circumstance; it is the fact that the crime was committed. Ind. Code § 35-50-2-9(b)(8); *Wrinkles v. State*, 749 N.E.2d 1179, 1186 n. 2 (Ind. 2001); *Hough v. State*, 560 N.E.2d 511, 519 (Ind. 1990); see *Townsend v. State*, 533 N.E.2d 1215, 1227 (Ind. 1989). (A murder conviction is a separate aggravating circumstance under the Indiana statute. Ind. Code § 35-50-2-9(b)(7).) And not only did the petitioner admit to killing the mother; it was the centerpiece of his defense to the charge of his having killed the children. Since mercy killing is murder, he was admitting to murder and the admission would have been used at his sentencing hearing regardless of whether he had pleaded guilty or been convicted by a jury. He very much wanted to avoid having his guilt determined by the jury because a jury would be highly likely to recommend the death penalty, given the number and nature of his victims and his conduct afterwards. We cannot imagine what elaboration by the judge of the possible consequences of a guilty plea to the murder of the mother would have induced the petitioner to refuse to plead and instead take his chances with the jury.

By the same token we cannot understand how it might be thought either to show a want of professional competence, or to have been prejudicial to the petitioner, that his lawyer did not advise him to refuse to plead guilty and instead stand trial. So his claim of ineffective assistance fails as well.

We also reject the district judge's conclusion that remarks by the state trial judge at sentencing show he based the death sentence in part on aggravating circumstances that, not being found in the Indiana death-penalty statute, were improper. *Sochor v. Florida*, 504 U.S. 527, 532 (1992); *Clemons v. Mississippi*, 494 U.S. 738, 751-52 (1990); *Hough v. Anderson*, 272 F.3d 878, 905-07 (7th Cir. 2001). The trial judge described the petitioner's crimes as cold-blooded and the victims as helpless, and neither the cold-blooded character of a murder nor the helpless character of the victims is an aggravating circumstance under the Indiana statute. But the murders *were* cold-blooded and the victims helpless. The judge was making an observation about the crimes that was not only true but inescapable.

So in effect the petitioner is contending that if the sentencing judge does more than recite statutory language, the sentence must be vacated on the ground that it was based on improper factors. We disagree. The judge's responsibility was not exhausted in identifying the presence of one or more of the statute's aggravating and mitigating circumstances. He not only had to balance them, since he could not impose the death sentence if the aggravating circumstances did not outweigh the mitigating ones; but he had to decide whether to exercise the discretion granted him by the statute not to impose the death penalty even if the aggravating circumstances did outweigh the mitigating ones. Ind. Code §§ 35-50-2-9(e), (k)(2); *Bivins v. State*, 642 N.E.2d 928, 946 (Ind. 1994); *Miller*

*v. State*, 623 N.E.2d 403, 409 (Ind. 1993). *Bivins* and *Miller* are cases in which the jury was the sentencer, but when the judge is, as in this case, he must make the same analysis. Ind. Code §§ 35-50-2-9(g), (k).

It was *after* the judge had found the existence of statutory aggravating circumstances, and had turned to the question whether they outweighed the mitigating circumstances, that he made the remarks in question; and they were germane to that purpose. They showed why the judge thought the balance inclined as it did and why he thought the case inappropriate for an exercise of mercy. They thus promoted the transparency of the sentencing process. It would be unfortunate if judges were forced to clam up at sentencing because any comments they made about the nature of the defendant's crime that did not pertain directly to a statutory aggravating or mitigating circumstance required resentencing. Such clamming up is not required by the Eighth Amendment and it would violate Indiana law. "The trial court must find that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances. This evaluating and weighing process should be described in the trial court's sentencing statement." *Roark v. State*, 644 N.E.2d 565, 570 (Ind. 1994) (citations omitted); see also *Holmes v. State, supra*, 671 N.E.2d at 852; *Evans v. State*, 563 N.E.2d 1251, 1254-55 (Ind. 1990).

We are mindful that in *Wright v. Walls*, 288 F.3d 937, 942-46 (7th Cir. 2002), a divided panel of this court recently interpreted the remarks of the sentencing judge in that death case to exclude the possibility that he was complying with state and federal law. The dissenting judge in our court argued that federalism required a presumption against interpreting the sentencing judge's remarks as being gounded in a misunderstanding of the applicable

legal principles, state and federal, and expressed an understandable concern about the pitfalls of literal interpretation of oral remarks made by a judge at sentencing. The clamming-up danger was real. But whatever the merits or demerits of *Wright*, it does not dictate the outcome of this case. No fair reading of the sentencing judge's remarks suggests a misunderstanding of state or federal law.

Turning to the petitioner's cross-appeal, we find only one issue that merits discussion. It is whether the petitioner's trial counsel failed in his duty of effective assistance by failing to accompany the petitioner to the presentence interview by the probation officer assigned to the case; at that interview the petitioner repeated his denial of having murdered the children, despite his having pleaded guilty to those murders too.

The issue of whether the lawyer's absence from the interview constituted ineffective assistance of counsel was almost certainly waived in the state court system and in any event has no merit. The lawyer's presence could not have made any difference to his client's ultimate fate. Even if the lawyer would have prevented him from making an undoubtedly perjurious denial, we cannot imagine what difference that could have made in the sentence. Perjury was the least of the petitioner's crimes, and there is no basis for thinking it weighed in the judge's decision to sentence him to death.

After the argument of this appeal, the Supreme Court decided *Ring v. Arizona*, 122 S. Ct. 2428 (2002), holding that capital defendants are entitled to a jury determination of any fact, such as the existence of a mitigating or aggravating factor, that constitutes a legislatively ordained condition of capital punishment. The parties agree that we cannot consider *Ring* in deciding this appeal because the Supreme Court has not yet held it to be retroactive. See *Tyler v. Cain*, 533 U.S. 656, 662-64 (2001).

For the reasons stated earlier, the petition for habeas corpus should have been denied.

REVERSED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*