Patrick B. WILMINGTON,
Petitioner–Appellant,

v.

Jerry L. STERNES, Respondent–
Appellee.

No. 03–1613.

United States Court of Appeals,
Seventh Circuit.

Argued July 7, 2004.

Decided Aug. 26, 2004.

Before CUDAHY, COFFEY, and ROVNER, Circuit Judges.

ORDER

Patrick Wilmington appeals from the denial of his petition for a writ of habeas

corpus, 28 U.S.C. § 2254, challenging his state conviction for aggravated battery with a firearm. He asserts that he was denied a fair trial because the prosecutor made improper comments during closing argument. We affirm.

In June 1995, Latoria Williams and a group of people gathered on a friend's porch in Rock Island, Illinois. Patrick Wilmington and his girlfriend, Monica Rogers, were walking Rogers's dog, and passed by the group. Wilmington and Rogers were arguing loudly. One of the men on the porch made a comment to Wilmington, and the two exchanged words. The altercation ended with Wilmington saying, "I'll be back." Approximately 15 minutes later, a man showed up at the house and said, "I told you I'd be back." He pulled out a gun and began shooting at the group. Williams, then three months pregnant, was shot in the side. She and another eyewitness later identified Wilmington as the shooter. Williams knew Wilmington because he had dated her best friend a few years earlier. Wilmington was arrested, and police searching his apartment found a pill bottle containing .25 caliber full metal jacket bullets, the same type of bullet removed from Williams's stomach.

At trial, among other evidence, the state relied on testimony from Williams and another eyewitness identifying Wilmington as the shooter, along with forensic evidence regarding the similarity of the bullets. Another witness testified that she saw the initial altercation between Wilmington and one of the men on the porch and heard Wilmington say, "I'll be back," although she left before the actual shooting. The state also introduced testimony from Wilmington's girlfriend that Wilmington told her the day after the shooting to lie on his behalf and tell anyone who asked that he had been with her all night. Also,

the victim, Williams, testified that Wilmington called her at her father's house about a month before the trial and asked her to testify that she was uncertain who had shot her. The state introduced phone records from the jail where Wilmington was being held showing a 13 minute call to the home of Williams's father, and a deputy sheriff testified that Wilmington had access to the phone where the call originated.

In his defense, Wilmington relied on testimony from another eyewitness, Travaughn Lewis, who testified that he heard the gunman say, "I told you I'd be back," but that he could not identify Wilmington as the shooter. The state impeached Lewis with a conflicting statement he had given to police two days after the shooting, in which Lewis said that he recognized the shooter's voice as Wilmington's. Wilmington also called Cranford Bourrage, who testified that he knew Wilmington from the neighborhood and was present at the shooting scene, and that he saw the assailant get into a car which, he testified, was not Wilmington's. Bourrage testified that he did not know whether Wilmington was the shooter because he could not see the person's face. On cross examination, the state questioned Bourrage about why he never spoke with police investigating the shooting; Bourrage responded that he gave his information to a police officer on the scene but that the officer did not hear him. Wilmington also took the stand in his own defense, denying any part in the firing of the gun. He testified that after his walk with Rogers, he returned home and fell asleep on the couch. He admitted to calling the victim, Williams, before the trial, but denied trying to intimidate her and testified that he only wanted to inquire about her health.

The jury convicted Wilmington of aggravated battery with a firearm. The judge

determined that based on this offense Wilmington had also violated his court-ordered probation for an earlier unlawful-use-of-a-weapon conviction, in which he had plead guilty to possessing a sawed-off shotgun. The court sentenced him to five years' imprisonment for the prior weapons conviction and 22 years' imprisonment for the aggravated battery conviction, with the sentences to run consecutively.

Wilmington appealed his conviction and sentence to the Appellate Court of Illinois, raising two arguments: (1) the prosecutor committed misconduct during closing argument when he vouched for the credibility of witnesses, attacked Wilmington's veracity, and misstated the evidence and the law; and (2) the trial court abused its discretion in revoking his probation and sentencing him to the maximum term for the prior weapons conviction. The state appellate court affirmed his conviction, and the Supreme Court of Illinois denied his petition for leave to appeal. Wilmington then filed a pro se post-conviction petition in state court, arguing that he had been denied effective assistance of counsel during his trial and sentencing. The court denied his petition, and the state appellate court affirmed. The Supreme Court of Illinois denied his petition for leave to appeal.

In May 2002, Wilmington filed a pro se habeas corpus petition in the district court. He raised three claims: (1) he was denied a fair trial as a result of prosecutorial misconduct during closing argument; (2) his counsel was ineffective in failing to move for substitution of the trial judge, who was known as "harsh and unsympathetic"; and (3) his conviction violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

The district court denied Wilmington's petition, rejecting all three claims. Wilmington filed a notice of appeal, and the district court granted him a certificate of appealability, but only as to his prosecutorial-misconduct claim. The court concluded, without elaboration, that Wilmington made "a substantial showing of the denial of a constitutional right with respect to [the prosecutor's] comments."

Our review is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lambert v. McBride*, 365 F.3d 557, 561 (7th Cir.2004). Under AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent, or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d)(1), (2); *Early v. Packer*, 537 U.S. 3, 7–8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2003); *Lambert*, 365 F.3d at 561.

On appeal, Wilmington fails to present an argument that the state court's resolution of his prosecutorial-misconduct claim on direct appeal was contrary to, or involved an unreasonable application of, Supreme Court precedent. Instead, he frames the issue as if his case were on direct appeal and we were conducting a de novo review of the prosecutor's conduct. Indeed, in his opening brief Wilmington fails to even mention AEDPA's governing standard, much less attempt to explain how he can prevail given the deference required to be shown to the state appellate court. In his reply brief, he appears to argue that the state court's decision was an unreasonable application of Supreme Court precedent, but he fails to develop the argument beyond devoting a few sentences to the general standard of review. *See* Fed. R.App. P. 28(a)(9); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852 n. 6 (7th Cir.2002) (perfunc-

tory and undeveloped arguments are waived on appeal). Wilmington's briefs were unhelpful in considering the issue before us: whether the state court unreasonably concluded that Wilmington received a fair trial.

Wilmington's claim is that during closing argument the prosecutor acted improperly by vouching for the credibility of state witnesses; injecting his personal opinion about the credibility of defense witnesses; implying facts not in evidence; and misstating the burden of proof. He argues that the prosecutor's conduct denied him a fair trial, and that absent the prosecutor's improper remarks he would have been acquitted.

A prosecutor's misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). In evaluating a claim involving improper remarks by a prosecutor, the court first examines whether the comments themselves were improper. *See United States v. Bowman*, 353 F.3d 546, 550 (7th Cir.2003). If the comments were improper, the court then evaluates the statements in light of the entire record and determines whether the defendant was denied a fair trial. *Id.* In conducting this inquiry, the court considers several factors, including: the nature and seriousness of the misconduct; whether the comments were invited by the defense; the extent to which the remarks may have been neutralized by the court's instructions to the jury; the defense's opportunity to counter any prejudice; and the weight of the evidence supporting the conviction. *Id.*

The state appellate court concluded that the prosecutor's remarks did not deny Wilmington a fair trial. The court, in reaching its conclusion, relied on several state-court cases, which are consistent with Supreme Court precedent. *See People v. Morgan*, 142 Ill.2d 410, 154 Ill.Dec. 534, 568 N.E.2d 755, 770–71 (Ill.1991) (prosecutor's comments not error where evidence favored government and jury was properly instructed); *People v. Lyles*, 106 Ill.2d 373, 87 Ill.Dec. 934, 478 N.E.2d 291, 296 (Ill. 1985) (prosecutor may not express personal opinion about case); *People v. Ferguson*, 172 Ill.App.3d 1, 122 Ill.Dec. 266, 526 N.E.2d 525, 533 (Ill.App.Ct.1988) (holding that in absence of objection, improper remarks must be so prejudicial that they deprived defendant of fair trial); *People v. Barkauskas*, 147 Ill.App.3d 360, 100 Ill. Dec. 821, 497 N.E.2d 1183, 1188–89 (Ill. App.Ct.1986) (prosecutor's comment not improper if based on the evidence). Although the state court relied on state cases in reaching its decision, the Supreme Court has held that a state court need not cite or even exhibit an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8. Here, the state court's reasoning was consistent with Supreme Court precedent, and the court reasonably and properly concluded that the prosecutor's remarks did not deny Wilmington a fair trial.

Wilmington objects to approximately 20 different statements, set forth in his reply brief, that the prosecutor made during closing argument. Some of the comments are nothing more than permissible argument about the comparative reliability of the various witnesses. *See United States v. Sandoval*, 347 F.3d 627, 632 (7th Cir. 2003) (prosecutor is entitled to ask jury to weigh relative credibility of witnesses); *United States v. Catalfo*, 64 F.3d 1070, 1080 (7th Cir.1995) (prosecutor permitted to argue that jury should believe one witness over another).

A few of the prosecutor's comments are somewhat troubling and approached the outer limits of permissible argument, and perhaps the prosecutor did not exercise the best judgment. For example, several times the prosecutor made comments about the state's witnesses such as "she didn't sound like a liar" or "[her testimony] was believable," and emphasized that the witness "[took] an oath." A prosecutor may not "vouch" for the credibility of witnesses by expressing his or her personal opinion about the witness's truthfulness, or by eluding to facts outside the record that would bolster a witness's credibility. *See United States v. Cornett,* 232 F.3d 570, 575–76 (7th Cir.2000). The prosecutor's line of argument here might have suggested to the jury that *he* believed the state's witnesses were credible, which is not permitted. However, when the prosecutor's comments are viewed in context, it is clear he was basing his arguments on evidence before the jury, such as the witnesses' demeanor or the consistency of their account, and not on his personal view of the witness. This type of argument is permissible. *See United States v. Morgan,* 113 F.3d 85, 89–90 (7th Cir.1997) (prosecutor's characterization of state witness as "an honest citizen" was supported by the evidence and therefore permissible).

Also potentially troubling were the prosecutor's comments about Wilmington's credibility, particularly his characterization of Wilmington as "slick." A prosecutor should not make "intemperate" or "excessive" comments about a defendant's veracity, *see Catalfo,* 64 F.3d at 1080, but may comment on the defendant's credibility, and may even call the defendant a "liar," as long as the comment "reflects reasonable inferences from the evidence adduced at trial rather than personal opinion," *United States v. Goodapple,* 958 F.2d 1402, 1409–10 (7th Cir.1992); *see Catalfo,* 64 F.3d at 1080 (when evidence allows infer-

ence that defendant has been less than truthful, prosecutor does not err in referring to defendant as a liar during closing argument). Here, the prosecutor's "slick" remark was made in the context of a discussion about Wilmington's attempt to manufacture an alibi (as testified to by Monica Rogers), his attempt to confuse the police about where he stayed the night of the shooting (as testified to by the police officer who interviewed Wilmington after he was arrested), and his phone call to the victim shortly before the trial (as testified to by Latoria Williams). We held that the prosecutor's remarks were permissibly based on evidence in the record and not on his personal view of Wilmington. *See Bowman,* 353 F.3d at 551 (prosecutor's comment that defendant was a "convicted felon" was supported by the evidence and thus not improper); *Catalfo,* 64 F.3d at 1080 n. 8 (prosecutor's comment with respect to defendant that "[a]ll he did was get up there and lie to you time and again" permissibly based on evidence); *United States v. Spivey,* 859 F.2d 461, 466 (7th Cir.1988) (prosecutor's characterization of defendants as "con men" constituted reasonable inference based on the evidence and not prosecutor's personal opinion); *United States v. Chaimson,* 760 F.2d 798, 811 (7th Cir.1985) (prosecutor may call defendant a liar if comment is supported by the evidence).

Similarly, the prosecutor made various comments attacking the credibility of other witnesses—such as that Cranford Bourrage "appear[ed] out of nowhere mid trial, under the sleaziest of circumstances," that "these people are unbelievable literally and figuratively unbelievable," and that Travaughn Lewis "knows how to take the stand, mix up his story and sound like a big dummy." The prosecutor may comment on witness credibility as long as the comments are supported by proper infer-

ences gleaned from the evidence. *See Catalfo*, 64 F.3d at 1080. Here, there was evidence that Cranford Bourrage never spoke with police on the night of the shooting, that he was housed in the same cell block as Wilmington before the trial, and that the two spoke about Wilmington's case (although Wilmington claimed he told Bourrage only that Bourrage should talk to Wilmington's lawyer if he had information about the case). There was also evidence that Travaughn Lewis, despite his testimony that he could not identify Wilmington as the shooter, gave police a statement two days after the shooting that he recognized the shooter's voice as Wilmington's. Accordingly, the prosecutor's comments about the witnesses' credibility—or lack thereof—appear permissibly based on the evidence and not on the prosecutor's personal view of the witnesses.

Another comment mentioned in Wilmington's brief—the prosecutor's rhetorical question to the jury, "[d]oes this kind of thing happen, in these cases, all the time . . . ."—might suggest that the prosecutor was improperly injecting his personal experience into the proceedings. When viewed in context, however, this comment is not that troubling. In discussing why the eyewitnesses did not identify Wilmington as the shooter when questioned immediately after the shooting, the prosecutor posited that perhaps the witnesses did not want to involve the police until after the serious nature of Williams's injuries became known. The prosecutor stated, "[d]oes this kind of thing happen . . . all the time. I don't know. . . ." In a similar case, we found permissible a prosecutor's remark during closing argument that "I

am here to tell you it happens." *See United States v. Anderson*, 303 F.3d 847, 856 (7th Cir.2002). There, as here, the prosecutor's comment may be viewed as a "generic statement which would be understood as asking the jury to apply common sense," which is a permissible argument. *Id.*

Wilmington also challenges the prosecutor's statements about the burden of proof, particularly his comment, "The only thing you have to ignore in this case is the defendant's plea of not guilty and his denial of being the gunman." The prosecutor may permissibly comment on what the evidence shows, and may also argue that the defendant is guilty. *See United States v. Auerbach*, 913 F.2d 407, 418 (7th Cir.1990) (finding proper in context prosecutor's comments "there is no reasonable doubt in this case" and that defendant "[did] what he was charged with"). When considering the content of the record in its entirety, it appears the prosecutor was arguing that, based on the evidence, Wilmington's denial was incredible, and not that jurors were actually required to "ignore" his not guilty plea.

Moreover, Wilmington's counsel objected to only one of the prosecutor's remarks that he challenges in his § 2254 petition.[1] Because Wilmington failed to object to the prosecutor's conduct at trial, the state court conducted a plain error review. Under the plain error standard, Wilmington was required to demonstrate that the prosecutor's remarks denied him a fair trial, and that the outcome of the trial would have been different absent the improper

---

1. Wilmington's trial counsel objected to the prosecutor's comment that Wilmington had been impeached with "about a gazillion" inconsistent statements while on the witness stand. The court told the prosecutor to re-phrase his statement, at which point he said, "You get my point." *See Cornett*, 232 F.3d at 576 (prosecutor's comments neutralized when district court sustained objection by defendant's counsel).

comments.[2] *See Bowman,* 353 F.3d at 550.

Even assuming that the prosecutor's comments were improper, Wilmington has failed to establish that the result of the trial would have been different absent the prosecutor's remarks. As a general matter, a prosecutor's improper comments during closing argument rarely rise to the level of reversible error, particularly when the trial court properly instructs the jury and the weight of the evidence favors the government. *See Cornett,* 232 F.3d at 574–76. During Wilmington's trial, there were numerous points in which jurors were told that they were the sole arbiters of witness credibility. For example, in response to an objection by defense counsel, the court instructed the jury that "credibility is what you have to judge, regardless of who calls the witness." Defense counsel also argued to the jury during closing, "You are the ones, final triers of the facts, you are the ones making the determination of what happened that evening." On rebuttal, the prosecutor at one point advised the jury, "What I say isn't evidence." In its final charge to the jury, the court instructed, "Only you are the judges of the believability of the witnesses and the weight to be given to the testimony of each of them." The court further instructed that closing arguments are not evidence, and that "any statement or argument made by the attorneys which is not based on the evidence should be disregarded." The court also properly instructed jurors regarding the burden of proof:

"The defendant is presumed to be innocent of the charge against him.... The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case." These instructions addressed any potential prejudice that might otherwise have been caused by the prosecutor's remarks. *See Cornett,* 232 F.3d at 576; *Catalfo,* 64 F.3d at 1081; *United States v. Davis,* 15 F.3d 1393, 1401–02 (7th Cir.1994).

Further, there was substantial evidence in the record to support Wilmington's conviction, including the testimony of the victim and another eyewitness, both of whom knew Wilmington and identified him as the shooter; the bullets found in Wilmington's apartment; and the testimony of Wilmington's girlfriend that he tried to fabricate an alibi. Wilmington's defense was weak: he offered his own denial of involvement in the shooting, plus testimony from Travaughn Lewis, who disclaimed recognition of Wilmington as the shooter even though he previously told police the shooter had Wilmington's voice, and Cranford Bourrage, who had no idea whether Wilmington was the shooter because he did not see the man's face. Wilmington also made much of the fact that neither of the state's key witnesses—Williams and her friend—identified him as the shooter when questioned by a police officer minutes after the shooting. This does not seem particularly suspect, however, considering that, according to the police officer, Williams was vomiting blood and eventually passed out while he

---

2. Wilmington appears to argue in his brief that we should apply the plain error standard in reviewing his prosecutorial-misconduct claim. Again, Wilmington has confused the issue before this court. The plain error standard applies to cases on direct appeal, not to a federal habeas petition challenging a state conviction. *See Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

Indeed, the burden of justifying habeas relief is even "greater than the showing require to establish plain error on direct appeal," because of the deference afforded the state court. *See id.* at 135. At argument, counsel for Wilmington appeared to concede that the plain error standard is inapplicable to this appeal.

was questioning her, and Williams' friend was "hysterical" over the shooting. *See United States v. DeRobertis,* 798 F.2d 1062, 1066 (7th Cir.1986) (observing that it was not surprising victim in her physical and emotional condition was unable to identify the defendant from a group of pictures hours after traumatic rape). Wilmington has therefore failed to demonstrate that the result of the trial would have been different absent the prosecutor's remarks. *See Cornett,* 232 F.3d at 575–76; *United States v. Johnson–Dix,* 54 F.3d 1295, 1305 (7th Cir.1995).

For these reasons, we AFFIRM the judgment of the district court denying Wilmington's petition for a writ of habeas corpus.