LAMBERT, Michael Allen, petitioner,

v.

STATE of Indiana.

No. 18S00–0412–SD–503.

Supreme Court of Indiana.

April 28, 2005.

PUBLISHED ORDER CONCERNING SUCCESSIVE PETITION FOR POST–CONVICTION RELIEF IN CAPITAL CASE

*Introduction*

Petitioner Michael Allen Lambert was convicted of murder and sentenced to death for killing a law enforcement officer acting in the course of duty. Lambert now asks leave to litigate in state court another collateral claim relating to the death sentence. Because we conclude that Lambert has not shown a reasonable possibility that he is entitled to relief, we deny his request.

*Procedural Background*

Having been arrested for public intoxication on December 28, 1990, Lambert was handcuffed and placed in the back seat of a squad car driven by Muncie Police Officer Gregg Winters. With a gun stolen from his employer, Lambert shot Officer Winters five times. Officer Winters died several days later. A jury found Lambert guilty of intentional murder. *See* Ind. Code § 35–42–1–1.

The State sought the death penalty, alleging one aggravating circumstance that would render Lambert eligible for the sentence: Officer Winters had been acting in the course of duty when Lambert shot him. *See* I.C. § 35–50–2–9(b)(6). The jury unanimously recommended the death penalty. The trial court followed the

jury's recommendation and sentenced Lambert to death.

Lambert's conviction was affirmed on direct appeal in *Lambert v. State,* 643 N.E.2d 349 (Ind.1994). On rehearing, we agreed with Lambert that the jury should not have heard certain evidence about the impact Officer Winters's death had had on his family and co-workers, but we exercised our authority to review and revise sentences and affirmed the death sentence for Lambert. *Lambert v. State,* 675 N.E.2d 1060, 1066 (Ind.1996), *cert. denied,* 520 U.S. 1255, 117 S.Ct. 2417, 138 L.Ed.2d 181 (1997). The trial court's judgment denying collateral relief was affirmed on appeal in *Lambert v. State,* 743 N.E.2d 719 Ind.2001), *reh'g denied* (2001), *cert. denied,* 534 U.S. 1136, 122 S.Ct. 1082, 151 L.Ed.2d 982 (2002). Lambert then sought relief in the federal courts. The district court denied his petition for writ of habeas corpus in *Lambert v. Davis,* No. IP 01–864–C–M/S, unpublished order (S.D.Ind. Dec. 4, 2002). The Seventh Circuit Court of Appeals affirmed in *Lambert v. McBride,* 365 F.3d 557 (7th Cir.2004), *reh'g and reh'g en banc denied, cert. denied,* 543 U.S. ——, 125 S.Ct. 669, 160 L.Ed.2d 507 (2004).

Lambert has thus completed the review of the conviction and sentence to which he is entitled as a matter of right.

By counsel, Lambert has now filed a "Tender of Successive Petition For Post–Conviction Relief (Capital Case)" and has submitted a proposed "Petition For Post–Conviction Relief." The State filed its "Verified Response in Opposition to Tender of Successive Petition for Post–Conviction Relief" and Lambert was allowed to file "Petitioner's Reply to the State's Verified Response in Opposition to Tender of Successive Petition For Post–Conviction Relief." In these papers, Lambert requests permission to litigate the question whether his death sentence should be vacated.

We have jurisdiction because Lambert is sentenced to death. *See* Ind. Appellate Rule 4(A)(1)(a).

### Our Post–Conviction Rules

Lambert has already availed himself of our rule that permits a person convicted of a crime in an Indiana state court one collateral review of the conviction and sentence in a post-conviction proceeding. *See* Ind. Post–Conviction Rule 1. As indicated above, Lambert did not prevail on his collateral claims; the trial court entered judgment against him and we affirmed that judgment on appeal.

To litigate another or "successive" post-conviction claim, Lambert needs our authorization. We will authorize the proceeding to go forward "if the petitioner establishes a reasonable possibility that the petitioner is entitled to post-conviction relief." P–C.R. 1 § 12(b). In deciding whether a petitioner has made the required showing, we consider the applicable law, the petition and materials from the petitioner's prior appeals and post-conviction proceedings including the record, briefs and court decisions, and any other material we deem relevant. *Id.*

### Lambert's Claim

Lambert's sole claim relates to the appropriate remedy when evidence is erroneously admitted in the penalty phase of a capital trial. This is an issue he has raised in one form or another, and lost, in each of his prior proceedings.

On rehearing in the direct appeal, we agreed with Lambert that the jury should not have heard the victim impact evidence during the penalty phase of the trial, and we agreed with him that the error was not harmless. *See Lambert v. State,* 675 N.E.2d at 1064–65 ("Because the majority of the victim impact testimony given was

irrelevant to the charged aggravator, it was improper and should not have been admitted."). We reached a conclusion different than Lambert advocated, however, on the proper remedy for the error.

■ As we explained, where we find an irregularity in a death sentence, we may (1) remand to the trial court for a new sentencing determination, (2) affirm the death sentence if the error is harmless beyond a reasonable doubt, or (3) use our appellate authority to independently reweigh the proper aggravating and mitigating circumstances. *Id.* at 1065 (citing *Bivins v. State,* 642 N.E.2d 928, 957 (Ind. 1994), *cert. denied,* 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996).

In Lambert's case, we selected the third option. We reviewed the properly admitted evidence concerning the aggravating and mitigating circumstances, concluded the aggravating circumstance outweighed the mitigating ones, and affirmed the trial court's death sentence. *See Lambert,* 675 N.E.2d at 1065–66.

Lambert claims that our appellate reweighing either did not cure the error or is not a valid remedy, *see* Tender at ¶ 5, but he cites no authority for either proposition and his claim has been rejected throughout the review process. In the post-conviction appeal, we specifically addressed and rejected Lambert's arguments with respect to our state's constitution, and noted the procedure had been employed in other capital cases. *Lambert v. State,* 743 N.E.2d at 727 (citing *Matheney v. State,* 688 N.E.2d 883, 909–10 (Ind.1997); *cert. denied,* 525 U.S. 1148, 119 S.Ct. 1046, 143 L.Ed.2d 53 (1999); *Bivins,* 642 N.E.2d at 957)). We also considered and rejected Lambert's arguments with respect to the federal Constitution. *Lambert,* 743 N.E.2d at 727. Similarly, the federal courts found no error under the U.S. Con-

stitution. *See, e.g., Lambert v. McBride,* 365 F.3d at 561–63.

Lambert now argues that our resentencing conflicts with *Saylor v. State,* 808 N.E.2d 646 (Ind.2004), a case we decided after his. The circumstances in the two cases are different, however, and we are not persuaded *Saylor* establishes any reasonable possibility that Lambert is entitled to relief. *Saylor* had been sentenced to death for a 1992 murder despite his jury's unanimous recommendation against a death sentence. Then in 2002, Indiana's death penalty statute was amended and no longer allows a person to be sentenced to death if the jury unanimously recommended against it. *See* I.C. § 35–50–2–9(e) (2004). We revised Saylor's death sentence to a term of years after concluding it was. "not appropriate to execute a person who was convicted and sentenced through a procedure that has now been substantially revised so the same trial today would no longer render the defendant eligible for the death penalty." 808 N.E.2d at 647.

■ The circumstances for Lambert are different. His is not a situation where the jury unanimously recommended against the death sentence. There is no suggestion the aggravating circumstance—Officer Winters was acting in the course of duty when Lambert shot him—was not proved beyond a reasonable doubt, which, in any event, we infer from the jury's unanimous recommendation. *State v. Barker,* 809 N.E.2d 312, 316 n. 2 (Ind.2004) (citing *Saylor v. State,* 765 N.E.2d 535, 574 (Ind. 2002) (Sullivan, J., concurring and dissenting) ("[W]hen a jury recommends a sentence of death or life without parole, it has by definition made the predicate determination of death eligibility required by *Apprendi.*")). As such, Lambert would be eligible for the death penalty today. *Id.* Finally, neither *Saylor* nor the 2002

amendments to the death penalty statute affect, in any way relevant to Lambert's case, our constitutional authority to review or revise sentences or the appropriate remedies for erroneous admission of evidence.

### Conclusion

Lambert has not met his burden of establishing a reasonable possibility that he is entitled to post-conviction relief. Accordingly, we decline to authorize the filing of a successive petition for post-conviction relief.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

BOEHM, J., dissents with opinion.

RUCKER, J., dissents with opinion.

BOEHM, J., dissenting.

I agree with Justice Rucker that we should allow Lambert to present his petition for post-conviction relief, but I reach that conclusion for somewhat different reasons. As I see it this case does not turn on federal constitutional developments, notably the requirement first announced in *Apprendi v. New Jersey* that a jury find all facts necessary to the judgment. Rather, it presents a variation on the theme first addressed in *Saylor v. State*, 808 N.E.2d 646 (Ind.2004). In *Saylor* we held that a death penalty imposed under the prior version of the Indiana death penalty statute should be revisited if it was imposed as a result of a procedure that could not lead to a death sentence under current law. Specifically, the jury in Saylor's case recommended against death, but the trial judge, as was permitted at the time but is not permitted under current law, nevertheless imposed a death sentence. We held, as a matter of state law, under those circumstances we should exercise our power under Article VII of the Indiana Constitu-

tion to "review and revise" that sentence. Here we do not have a jury recommendation against death. Rather we have a jury recommendation that was held to be the product of inadmissible and potentially prejudicial evidence. *Lambert v. State,* 675 N.E.2d 1060, 1064 (Ind.1996). As Justice Rucker points out, that is the functional equivalent of no jury recommendation. The issue, then, is what the consequence of a lack of a jury recommendation should be. I believe that is an issue resolvable under Indiana law without regard to *Apprendi* and its progeny.

In 1996 we unanimously held that the penalty phase of Lambert's trial was flawed and the error was not harmless because it may have contributed to the jury's recommendation in favor of the death penalty. A majority of this Court concluded that as a result of this error, this Court should review and revise Lambert's sentence. In 1996, Indiana's death penalty statute allowed the court to assess the death penalty, even if the jury recommended against death. I dissented at that time, contending that this Court should not independently assess the death penalty when we could not know what the jury would have recommended if the penalty phase were not tainted, and we could not know what the trial judge would have done if the jury had not recommended death. Accordingly, I concluded that a remand for a new sentencing hearing was required. The same reasoning applies today. We have a flawed jury recommendation, and therefore do not know whether, without the erroneously introduced evidence, the jury would have recommended death, as it did in Lambert's case, or recommended against death, as it did in Saylor's.

I do not agree with the majority's claim that Lambert would be eligible for the death penalty today. In 2002, the General Assembly amended Indiana's death penal-

ty statute. The current death penalty statute provides that a trial judge may impose the death penalty only if the jury has recommended that sentence or if the jury is unable to recommend a sentence. Ind.Code § 35–50–2–9 (2004). A trial court is no longer permitted to impose the death penalty when the jury recommends against it. In view of the jury verdict convicting Lambert of killing a law enforcement officer, the majority is presumably correct that there is no *Apprendi/Ring* bar to the death penalty. But I believe the death sentence in this case would be defective as a matter of Indiana state law if Lambert's trial had been conducted under the current Indiana statute. The trial court is precluded from imposing death without a proper jury recommendation in favor of the death penalty or the jury's inability to agree. I.C. § 35–50–2–9. Because of the acknowledged material error in the sentencing phase, we cannot know whether either of those conditions is met. This Court has the authority to review and revise sentences, but only within the parameters of the sentencing statutes. If this were a direct appeal from a trial conducted under the 2002 law, we therefore could not revise the sentence to impose death. We thus are faced with a situation very similar to that in *Saylor.* We have a defendant sentenced to death through a procedure that would be improper today. Accordingly, Lambert's case, like Saylor's, is not appropriate for death under the current death penalty statute. I would let Lambert proceed to test his claim that a proper penalty phase would provide a recommendation against death.

As the Seventh Circuit observed in affirming the denial of Lambert's habeas corpus petition, *Lambert v. McBride,* 365 F.3d 557, 563 (7th Cir.2004), I concurred in this Court's subsequent affirmance of the denial of post-conviction relief. *Lambert v. State,* 743 N.E.2d 719 (Ind.2001). I did so not because I had reached a different conclusion as to whether this Court's 1996 revision of Lambert's sentence was the correct result. Rather, I merely deferred to the stare decisis effect of the majority's view that appellate reweighing could properly result in a death sentence. Now, however, in light of the 2002 amendments to Indiana's death penalty statute, we have a development that in my view puts the appropriateness of that action in question.

RUCKER, J., dissenting.

Michael Allen Lambert seeks authorization to file a successive petition for post-conviction relief in order to litigate his claim that this Court's opinion in *Saylor v. State,* 808 N.E.2d 646 (Ind.2004), entitles him to relief. I would grant the petition. Therefore I dissent.

**Facts and Procedural History**

The factual background surrounding Lambert's conviction is set forth in other opinions of this Court. *See Lambert v. State,* 643 N.E.2d 349 (Ind.1994); *Lambert v. State,* 675 N.E.2d 1060 (Ind.1996); *Lambert v. State,* 743 N.E.2d 719 (Ind.2001). In brief, on December 28, 1990, officers of the Muncie Police Department arrested then twenty-year-old Michael Lambert for public intoxication. Although it was snowing and the temperature was in the teens, Lambert was lightly dressed and had been observed trying to crawl under a car in order to sleep. It was later determined that his blood alcohol level was .18. While handcuffed and sitting in the back seat of Officer Gregg Winters' patrol car, Lambert produced a handgun and fired several shots. Officer Winters died eleven days later from wounds to the back of the head and neck.

A jury convicted Lambert of murder and the trial court sentenced him to

death. This court affirmed Lambert's conviction and sentence on direct appeal. *See Lambert*, 643 N.E.2d 349 (Ind.1994). A second opinion, issued on rehearing, recognized that the trial court had improperly admitted victim impact evidence during the sentencing phase of trial, but this court upheld Lambert's death sentence after independently reweighing the aggravating and mitigating circumstances. *See Lambert*, 675 N.E.2d 1060 (Ind.1996), *cert. denied*, 520 U.S. 1255, 117 S.Ct. 2417, 138 L.Ed.2d 181 (1997). Lambert later petitioned for post-conviction relief, which the post-conviction court denied. We affirmed the denial. *See Lambert*, 743 N.E.2d 719 (Ind.2001), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1082, 151 L.Ed.2d 982 (2002). Lambert now seeks permission to file a successive petition for post-conviction relief.

### Discussion

The State sought the death penalty in this case based on the qualifying aggravating circumstance that the victim was a police officer killed in the course of duty. *See* Ind.Code § 35–50–2–9(b)(6). During the sentencing phase of trial, over Lambert's timely objection, the trial court allowed the State to present victim impact testimony from Muncie Chief of Police Donald Scroggins, Police Officer Terry Winters (the victim's brother), and Molly Winters (the victim's widow). Indiana law allows such testimony when relevant to the charged aggravating circumstance. However, most of the victim impact evidence was irrelevant to the charged aggravator, going "far beyond whether or not the victim was a police officer killed in the line of duty." *Lambert*, 675 N.E.2d at 1064.

The jury recommended the death penalty, the trial court followed the jury's recommendation, and we affirmed. However the nagging and unanswered question is whether, absent the victim impact testimo-

ny, the jury would have returned a recommendation of death. No one can say one way or the other with any certainty. We do know that the inadmissible testimony consumed some twenty-nine pages of transcript, was highly emotional, and even inspired this court to observe, "[i]ndeed, the testimony of Molly Winters about her husband and hero easily moves one to tears." *Id.* at 1065 n. 3. With this knowledge the Court declared:

> We cannot say with any degree of confidence that the jury remained uninfluenced by this testimony. Nor can we say with assurance that the substantial rights of Lambert were not affected. Therefore, we must hold that the error in admitting the victim impact testimony was not harmless error.

*Id.* Precisely because "we cannot say with any degree of confidence that the jury remained uninfluenced by [victim impact] testimony," and that the error in admitting the testimony "was not harmless," I am compelled to conclude that what we have here is the functional equivalent of no jury recommendation at all. Stated somewhat differently, it is impossible to know with any assurance whether the jury found the existence of the aggravating circumstance beyond a reasonable doubt, or that the jury determined that the existence of the aggravating circumstance outweighed any mitigating circumstance or circumstances.

The Sixth Amendment requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Ring v. Arizona*, made it clear that *Apprendi* applies to capital sentencing schemes. 536 U.S. 584, 589, 122 S.Ct. 2428, 153 L.Ed.2d 556. Here, Lambert's death sentence was based on facts extend-

ing the sentence beyond the maximum authorized by the jury's verdict finding him guilty of murder. But in effect there was no determination that the qualifying aggravating circumstance was proven beyond a reasonable doubt. If Lambert were before us on direct appeal, it is clear that his death sentence would violate the federal constitution. *See Bostick v. State*, 773 N.E.2d 266, 273 (Ind.2002) (holding *Apprendi* and *Ring* were violated by sentence imposed under Indiana's capital sentencing statute without a jury determination that the qualifying aggravating circumstances were proven beyond a reasonable doubt).

As the seventh circuit noted, "the procedure followed in this case is called into serious question by *Ring* [ ]." *Lambert v. McBride*, 365 F.3d 557, 563 (7th Cir.2004), *cert. denied,* 542 U.S. 348, 125 S.Ct. 669, 160 L.Ed.2d 507 (2004). However, the circuit court expressly held that *Ring* was not retroactive. *Id.* at 562. More recently the Supreme Court has spoken on the issue and also has held that *Ring* is an application of the procedural rule announced in *Apprendi,* and as such does not apply retroactively to cases already final on direct review. *Schriro v. Summerlin,* 542 U.S. 342, ———, 124 S.Ct. 2519, 2522–26, 159 L.Ed.2d 442 (2004). But that is not the end of the analysis. This Court has addressed previously the propriety of affirming a death sentence under circumstances analogous to those presented here.

The trial court sentenced Benny Saylor to death for a 1992 murder despite a unanimous jury recommendation against the death penalty. At the time, the jury's death penalty recommendation was advisory only and thus not binding on the trial court. Indiana's capital sentencing statute was amended in 2002 to provide in part, "[i]f the jury reaches a sentencing recommendation, the court shall sentence the defendant accordingly." Ind.Code § 35–50–2–9(e). Recognizing that the legal landscape had changed since Saylor was sentenced, we exercised our authority under Article VII, Section 4 of the Indiana Constitution and concluded that Saylor's death sentence was inappropriate. In doing so we said, "even if the Sixth Amendment does not bar Saylor's execution for a pre-*Ring* crime, as a matter of Indiana state law Saylor, if tried today, could not be sentenced to death without a jury recommendation that death be imposed." *Saylor*, 808 N.E.2d at 648.

It is true, as the majority points out, the jury in this case did not "unanimously recommend against the death sentence." Order at 3. However, the reverse is equally true: the jury did not properly recommend in favor of the death sentence. Before a jury can recommend the death penalty, it must find that "(1) the state has proved beyond a reasonable doubt that at least one (1) of the aggravating circumstances listed in subsection (b) exists; and (2) any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances." Ind.Code § 35–50–2–9(*l*) 2002. In this case, the trial court as well as this court found the existence of the aggravating circumstance: a police officer killed in the course of duty. *See* I.C. § 35–50–2–9(b)(6). And certainly the record would seem to support the existence of the aggravator. We cannot say, however, as a matter of law that the *jury* made such a finding. In fact, but for the improperly admitted testimony, given Lambert's age at the time of this murder (twenty) and the fact that he was highly intoxicated (scoring .18 on a breathalyzer test) it is conceivable that even had the jury found the existence of the charged aggravating circumstance, the jury may very well have determined that these two mitigating circumstances outweighed the sole aggravating circumstance and thus would have

recommended against the death penalty. It is also conceivable that even finding that the aggravating circumstance outweighed the mitigating circumstances the jury may have exercised its authority under Article 1, Section 19 of the Indiana Constitution and recommended against the death penalty. *See Bivins v. State,* 642 N.E.2d 928, 946 (Ind.1994) (commenting that because of Art. 1, § 19, a jury in a criminal case is not bound to convict even in the face of proof of guilt beyond a reasonable doubt); *Pope v. State,* 737 N.E.2d 374, 380 (Ind.2000) (noting that "even in the face of proof beyond a reasonable doubt to the contrary," the jury nonetheless could have recommended against life without parole either upon a finding that the State failed to prove the statutory aggravator, or that the statutory aggravator outweighed any mitigating circumstances).

A judge is not free under the 2002 amended statute to impose a death sentence absent a jury's unanimous finding that the State has proved beyond a reasonable doubt the existence of at least one of the statutory aggravating circumstances. Under the amended statute, the trial court is required to "provide a special verdict form for each aggravating circumstance alleged." Ind.Code § 35–50–2–9(d). As this Court has observed, "[i]t is thus conceivable that a penalty phase jury could return a verdict finding one or more aggravators proven beyond a reasonable doubt, but be unable to reach unanimous agreement on whether any mitigating circumstances are outweighed by the aggravating circumstances." *State v. Barker,* 809 N.E.2d 312, 316 (Ind.2004). Under those circumstances the trial court is authorized to "discharge the jury and proceed as if the hearing had been to the court alone." Ind.Code § 25–50–2–9(f). Still, however, "[i]n the event a penalty phase jury is unable to reach a unanimous decision as to the existence of aggravating circumstances, [ ] *Ring* and *Apprendi* would prohibit the trial judge from proceeding under Subsection 9(f) and a new penalty phase trial would be required." *Barker,* 809 N.E.2d at 316 (citation omitted). Here, although the reasons differ slightly from those in *Saylor,* it is apparent to me that as a matter of Indiana statutory law, if tried today Lambert could not be sentenced to death under the facts presented in this case. And this is so because as a practical matter there has been no jury finding of the statutory aggravating circumstance.

I would therefore (1) grant Lambert's request to file a successive petition for post conviction relief, (2) vacate his sentence of death based on the merits of his claim, and (3) remand this cause to the trial court for further proceedings. I would instruct the trial court that if the State elects to dismiss its request for a death sentence, then the trial court may proceed accordingly and resentence the defendant to a term of years as authorized by Ind.Code § 35–50–2–3(a).[1] I would also instruct that if the State proceeds with its death sentence request, then the trial court shall convene a new penalty phase jury and conduct further proceedings pursuant to Indiana Code § 35–50–2–9. *See Bostick,* 773 N.E.2d at 273–74.

---

1. Upon remand the trial court has the authority either to (i) order a new sentencing hearing, (ii) order additional briefing and then issue a new order, or (iii) issue a sentencing order without further proceedings. *O'Connell v. State,* 742 N.E.2d 943, 952–53 (Ind.2001).