In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2610

MICHAEL ALLEN LAMBERT,

*Petitioner-Appellant*,

*v.*

CECIL DAVIS, Superintendent,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:05-CV-708-LJM-VSS—**Larry J. McKinney**, *Chief Judge.*

ARGUED OCTOBER 26, 2005—DECIDED MAY 31, 2006

Before RIPPLE, KANNE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Michael Lambert was convicted of murder and sentenced to death for killing a Muncie, Indiana, police officer in 1990. After a decade of post-conviction litigation, and still under a sentence of death, Lambert exhausted his remedies in the Indiana courts and moved to federal court with the filing of a habeas corpus petition in 2001. The district court, Chief Judge Larry J. McKinney of the United States District Court for the Southern District of Indiana presiding, denied the petition in 2002. Lambert appealed that decision and we affirmed Chief Judge McKinney's judgment. *Lambert v. McBride*, 365 F.3d 557 (7th Cir. 2004), *cert. denied*, 125 S. Ct. 669 (2004).

After we rejected his claims in 2004, Lambert returned to state court with a new postconviction motion. When the Indiana courts again declined to grant his request for relief, *Lambert v. State*, 825 N.E.2d 1261 (Ind. 2005), Lambert returned once again to Judge McKinney with the filing of another petition for federal habeas corpus. The judge dismissed the petition, concluding that it was successive under 28 U.S.C. § 2244(b)(3)(A) and could not, therefore, be entertained without our approval. Lambert appealed that decision to us and we granted a certificate of appealability on two issues:

> (1) Whether Mr. Lambert's current petition for a writ of habeas corpus, which rests upon an act of the Supreme Court of Indiana that occurred subsequent to the filing of his initial habeas petition, constitutes "a second or successive application" for purposes of 28 U.S.C. [§] 2244, and if so, whether Mr. Lambert's current petition falls within a statutory or constitutional exception to the bar on second or successive petitions contained in [§] 2244(b)(2); and

> (2) Whether the decision of the Supreme Court of Indiana not to apply to Mr. Lambert's sentence the rule of *Saylor v. State*, 808 N.E.2d 646 (Ind. 2004), which made retroactive to some death sentences the 2002 amendments to the Indiana death penalty statute, constituted a violation of Mr. Lambert's rights to due process or to equal protection of the laws as guaranteed by the Fourteenth Amendment.

The facts in this case are outlined in our 2004 opinion and, in more detail, in the Indiana Supreme Court's 1994 opinion, *Lambert v. State*, 643 N.E.2d 349 (Ind. 1994). For our purposes, we can skip the details and simply note that in December of 1990, Lambert was arrested for public intoxication by a Muncie, Indiana, police officer. He was searched, handcuffed, and placed in the back seat of a

squad car. Unfortunately, a gun Lambert had hidden on his person escaped detection during the search. Then, while being driven to the police station by Officer Gregg Winters (Winters was not the officer who conducted the search), Lambert was somehow able to retrieve the gun and shoot Winters five times in the back of the head and neck. Winters died 11 days later. Lambert was charged with the intentional murder of Officer Winters, a jury found him guilty, and the same jury, after hearing evidence during the penalty stage of the proceeding, recommended a sentence of death. The trial judge then imposed the death penalty.

Lambert appealed his conviction and sentence to the Supreme Court of Indiana, which remanded the case to the trial judge to reconsider evidence of intoxication as a possible mitigating factor in the penalty determination. The trial judge again sentenced Lambert to death, and this time the court affirmed both Lambert's conviction and sentence. *Lambert*, 643 N.E.2d 349 (Ind. 1994). On rehearing, however, the court held that certain victim-impact evidence was improperly admitted into evidence before the jury and that its admission was not harmless error. But the court also found, after itself weighing the factors in aggravation and mitigation, that the death sentence was proper. *See Lambert v. State*, 675 N.E.2d 1060 (Ind. 1996).

Lambert then filed a petition for state postconviction relief in the trial court, raising claims that are not at issue here. The court denied relief and the Supreme Court of Indiana affirmed. *Lambert v. State*, 743 N.E.2d 719 (Ind. 2001). Along the way, petitions for writs of certiorari were presented to the United States Supreme Court and denied. *See Lambert v. Indiana*, 520 U.S. 1255 (1997); *Lambert v. Indiana*, 534 U.S. 1136 (2002).

Lambert filed a petition for a writ of habeas corpus in federal district court under 28 U.S.C. § 2254 in 2003, arguing that the Supreme Court of Indiana erred when it engaged in appellate reweighing of the aggravating

and mitigating factors and then upheld his death sentence despite finding that the trial court's admission of the victim-impact testimony before the jury was not harmless error. Lambert contended that this practice ran afoul of *Clemons v. Mississippi*, 494 U.S. 738 (1990), which held that it is constitutionally permissible for a state reviewing court to uphold a jury-imposed death sentence based in part on an invalid aggravating factor by reweighing the aggravating and mitigating evidence or through harmless error review. Lambert contended that *Clemons* allows either appellate reweighing or harmless error analysis, but not both. Therefore, in his view, once the Supreme Court of Indiana found nonharmless error, it should have vacated his death sentence and ordered a new sentencing proceeding. The district court denied his petition.

Lambert appealed and we affirmed the district court in 2004, noting that "[i]f reweighing can be done by the appellate court when the jury is charged with the sentencing decision [as in *Clemons*], . . . when the jury's determination is only advisory, the appellate court has latitude to reweigh the factors." *Lambert*, 365 F.3d at 563. Accordingly, we concluded that the Supreme Court of Indiana did not improperly extend the holding in *Clemons*.

After we wrapped up our work on the case, Lambert returned to state court with a request for leave to file a successive petition for postconviction relief. There, he argued that his death sentence conflicted with *Saylor v. Indiana*, 808 N.E.2d 646 (Ind. 2004), a recent case where the Supreme Court of Indiana invalidated a death sentence imposed by a judge despite a jury recommendation against it. In *Saylor*, the court noted that this "jury-override" was improper in light of the 2002 revisions to the Indiana death penalty statute, which provide that a trial judge cannot impose a death sentence if a jury unanimously recommends against it. In 2005, the court denied Lambert's request, concluding that because his circumstances were decidedly

different, *Saylor* did not apply. *See Lambert v. State*, 825 N.E.2d 1261, 1263 (Ind. 2005). In doing so, the court noted that "neither *Saylor* nor the 2002 amendments to the death penalty statute affect, in any way relevant to Lambert's case, our constitutional authority to review or revise sentences or the appropriate remedies for erroneous admission of evidence." *Id.* at 1264.

After coming up short again in state court, Lambert filed his present petition for a writ of habeas corpus, arguing once again that his sentence must be vacated because the jury's recommendation was tainted by the improper admission of certain victim-impact evidence. It was this petition that Judge McKinney dismissed for lack of jurisdiction. *See Nuñez v. United States*, 96 F.3d 990 (7th Cir. 1996). In doing so, Chief Judge McKinney concluded that:

> Lambert cannot evade the treatment of the present petitions as a second or successive petition based on the argument that the present claim was not "ripe" until the Indiana Supreme Court applied the 2002 amendments in *Saylor*. The essential nature of the argument here, as in Lambert's first habeas petition, is that the appellate reweighing of statutory factors in aggravation and mitigation and then permitting his death sentence to stand, all in the face of a flawed jury recommendation, is not constitutionally permissible.

Section 2244(b)(3)(A) "is an allocation of subject-matter jurisdiction to the court of appeals. A district court *must* dismiss a second or successive petition . . . unless the court of appeals has given approval for the filing." *Nuñez*, 96 F.3d at 991. Here, Lambert's petition is successive under § 2244(b)(3)(A), as it attacks the same judgment based on the same argument—that his death sentence is invalid because the jury recommendation was tainted by the improper victim-impact evidence it heard. Lambert, however, argues that his present challenge is new because it

was not "ripe" until *Saylor* was decided. We cannot accept his argument. *Saylor* is irrelevant to Lambert's sentence, as it concerned a trial court overriding a jury recommendation against imposing a death sentence. That is of no concern here because Lambert's jury recommended a sentence of death. Moreover, as we noted in our opinion denying his first collateral attack, the 2002 revisions to the Indiana death penalty statute were in place when his first petition was pending. Thus, he could have raised an argument based on the 2002 amendments in his initial petition.

But our analysis goes on. Under *Nuñez*, we may construe Lambert's appeal as an implied request that we grant leave to file a successive application for relief. We deny this request because Lambert's proposed claim does not meet the requirements for bringing a successive petition under 28 U.S.C. § 2244(b)(2). That provision requires that a successive application shall be dismissed unless:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Lambert's petition does not rely on these factors, and therefore it must be denied.

Finally, even if it were wrong to characterize Lambert's petition as successive, his challenge could not prevail

because it rests on a claim that the Indiana Supreme Court misinterpreted state law. The claim, quite simply, is that the court was required to give him the same benefit it bestowed on the defendant in *Saylor*. The court in *Saylor*, however, interpreting state law, did not consider the 2002 Indiana statutory amendments to be retroactive. Instead, it used its state-law authority to review and revise sentences to vacate a sentence that could not be imposed today. *Saylor*, 808 N.E.2d at 647.[1]

In resolving Lambert's case, the court found that his circumstances were materially different from those in *Saylor*. Without question, the aggravating circumstance—the murder of a police officer acting in the course of duty—was proven beyond a reasonable doubt in Lambert's case, and the jury did not recommend against a death sentence. Unlike the defendant in *Saylor*, Lambert could still receive a death sentence today if his case was tried again with the same result as before. What Lambert argues now is that the state supreme court got it wrong in construing Indiana law because it was obligated to revise his sentence as "inappropriate" in light of the statutory change. But this is an issue of state, not federal, law. Federal habeas courts lack subject-matter jurisdiction over such issues. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (matters of state law are outside the purview of federal habeas corpus). Moreover, to the extent

---

[1] Our dissenting colleague, in a bit of overheated hyperbole, accuses us of a "willingness to tolerate even the most egregious forms of discrimination at the hands of a state." But the Supreme Court of Indiana didn't decline to grant relief to Mr. Lambert (to use the dissent's examples) because of his race or religion. It applied—free of discrimination—state law. That our dissenting colleague is more comfortable with the view expressed by the dissenters in Indiana is not a reason why we are free to jettison the view of that court's majority.

that they were even presented, the state supreme court reasonably rejected Lambert's due process and equal protection claims. *Lambert*, 825 N.E.2d at 1263-64.

Our understanding of *Saylor* is further buttressed by the case of Eric Holmes, who was sentenced to death despite his jury being unable to reach a unanimous recommendation that the penalty should be applied. Holmes was also denied relief under *Saylor* because Indiana law still permitted (of course, the landscape was changed in *Ring v. Arizona*, 536 U.S. 584 (2002), but, as we pointed out when we last saw this case, that decision is not retroactive, *see Lambert*, 365 F.3d at 561-62) a sentence of death where a jury was hung and made no recommendation as to an appropriate sentence. *See Holmes v. State*, 820 N.E.2d 136, 138-39 (Ind. 2005).

As we have observed, "Nothing in the Constitution entitles state defendants to obtain a federal benefit from errors of state law." *In re Page*, 170 F.3d 659, 662 (*on reh'g*, 179 F.3d 1024 (1999)). And, at most, that's what Lambert points to. Accordingly, we AFFIRM the district court's judgment and DENY Lambert's requests for leave to file a successive petition for a writ of habeas corpus. We also vacate the stay of execution entered on June 17, 2005.

RIPPLE, *Circuit Judge*, dissenting.

## I

At this stage of the proceeding, the prime question before us is whether the district court was correct in ruling that Mr. Lambert's petition was a successive petition. Having characterized the petition as successive, the district court dismissed the action because the petitioner had not obtained permission from this court to file such a petition. R.12 at 2.

In my view, the district court erred in this determination. It should have permitted the petition to be filed and decided the matter in due course. I would therefore reverse the judgment of the district court and remand this case for proceedings consistent with this opinion.

Section 2244(b)(2) of the judicial code provides:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
> > (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> >
> > (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

My colleagues take the district court's view that, because Mr. Lambert's habeas petition does not fall within the categories defined by (A) or (B), it must be dismissed. However, Mr. Lambert must meet the requirements set forth in (A) or (B) only if his petition is actually a "second or successive" petition. The Supreme Court has instructed that "'second or successive' is a term of art given substance in our prior habeas corpus cases," *Slack v. McDaniel*, 529 U.S. 473, 486 (2000), which incorporates the abuse of the writ doctrine.[1] The case law provides little other guidance,

---

[1] The Supreme Court's decision in *Slack v. McDaniel*, 529 U.S. 473 (2000), calls into question the reasoning of this court in *In re Page*, 179 F.3d 1024 (7th Cir. 1999), on which the State of Indiana relies. In *Page*, we stated:

> Before the enactment of the Antiterrorism and Effective Death Penalty Act, which added section 2244(b)(2) to the habeas corpus statute, specifying the criteria for when a second or successive petition is permitted, the only limitation on a prisoner's right to file successive petitions for federal habeas corpus was the judge-made concept of "abuse of the writ." That concept, an application to the habeas corpus setting of general principles of waiver or forfeiture, was replaced by the new criteria and passed out of the law. As we explained in *Burris v. Parke*, 95 F.3d 465, 469 (7th Cir. 1996) (en banc), "The doctrine of abuse of the writ is defunct. The term derives from section 2244(b), now wholly superseded by the new law [i.e., AEDPA], which nowhere uses the term. There is no longer any statutory handle for the doctrine, and in any event its role seems wholly preempted by the detailed provisions of the new statute concerning successive petitions."

*Page*, 179 F.3d at 1025. In *Slack*, however, the Court dismissed the notions that the language employed in AEDPA represented a clean slate or that its pre-AEDPA case law could not inform the term "second or successive" as used in that Act:

> The District Court dismissed claims Slack failed to raise
> (continued...)

<hr>

[1]  (...continued)

in his 1991 petition based on its conclusion that Slack's 1995 petition was a second or successive habeas petition. This conclusion was wrong. A habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition.

Slack commenced this habeas proceeding in the District Court in 1995, before AEDPA's effective date. Because the question whether Slack's petition was second or successive implicates his right to relief in the trial court, pre-AEDPA law governs, *see Lindh v. Murphy*, 521 U.S. 320 (1997), though we do not suggest the definition of second or successive would be different under AEDPA. *See Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998) (using pre-AEDPA law to interpret AEDPA's provision governing "second or successive habeas applications"). . . .

The phrase "second or successive petition" is a term of art given substance in our prior habeas corpus cases. . . .

*Slack*, 529 U.S. at 485-86 (parallel citations omitted).

In *Page*, this court said that the statutory exceptions established in AEDPA were wholly new standards that replaced our former understanding of habeas law. Interpretations of prior law were now irrelevant because Congress meant to establish a wholly new system. However, in *Slack*, the Court rejected this premise. The Court stated that pre-AEDPA law could, in fact, inform our understanding of AEDPA.

Nevertheless, *Page* speaks to a very different factual and procedural situation from the one here. In *Page*, the state court applied retroactively a new rule to the petitioner on collateral review. Here, by contrast, Mr. Lambert's contention is not simply that he should or should not be the beneficiary of a newly established rule. Mr. Lambert's contention is that the Supreme Court of Indiana has been arbitrary and capricious in determining to whom it will apply this new rule. It is the direct impact of the arbitrary application of the rule on him that raises

(continued...)

and the legislative history of AEDPA does little to illuminate further the meaning of those terms.

There is no question that, in enacting AEDPA, Congress desired to put an end to the constant stream of habeas petitions that were filed successively for no other reason than to prolong the judicial process. *See* H.R. Conf. Rep. 104-518, at 111 (1996) ("This title incorporates reforms to curb the abuse of the statutory writ of habeas corpus, and to address the acute problem of unnecessary delay and abuse in capital cases."). However, it also is clear that the petition now before us, when evaluated in the context of its procedural history and of the constitutional issue presented, is not the prototypical successive habeas corpus petition. This case is not an attempt to revisit issues or matters that already have been litigated or could have been litigated in the first petition. This present claim is based on a *state judicial act,* a decision of the Supreme Court of Indiana that occurred *after the completion of the first habeas action*; the alleged constitutional deprivation is *based upon the failure of the state court to treat the petitioner in a manner consistent with its treatment of other similarly situated individuals.* It is difficult to imagine that, when Congress enacted AEDPA in an attempt to curb the filing of serial petitions that did nothing more than revisit already-litigated matters, it intended to prevent the redress of the type of grievance we have here—an action that could not have been known or even anticipated at the time the petitioner pursued the initial federal habeas claim.

In not recognizing this important feature of the present petition, the panel majority seemingly expresses its willingness to tolerate even the most egregious forms of discrimination at the hands of a state, whenever the discrimination occurs after the filing of the first petition. If, for example,

---

[1] (...continued)
the Eighth Amendment concerns articulated by Mr. Lambert.

Mr. Lambert were alleging that the state supreme court did not simply act arbitrarily, but instead made its decision to "review and revise" based on the race or the religion of the petitioner, would the majority adhere to its belief that § 2244 barred review? However, the fact that Mr. Lambert's claim is more nuanced than such a hypothetical situation is not a reason to deprive Mr. Lambert of a means of redress of which Congress certainly did not wish to deprive him.

## II

My colleagues believe that this petition presents no substantial federal claim cognizable on habeas review. In their view,

> [t]he claim, quite simply, is that the court [Supreme Court of Indiana] was required to give him [Lambert] the same benefit it bestowed on the defendant in *Saylor*. The court in *Saylor*, however, interpreting state law, did not consider the 2002 Indiana statutory amendments to be retroactive. *Instead, it used its state-law authority to review and revise sentences to vacate a sentence that could not be imposed today.*

Slip op. at 7 (emphasis added; citations omitted). In my view, it is precisely this ad hoc selection of cases for "review and revis[ion]," as opposed to a principled application of the new rule of state law, that raises federal constitutional concerns that, under the governing statutory scheme embodied in § 2254, ought to be presented to the district court. "[C]apital punishment [must] be imposed fairly, and with reasonable consistency, or not at all." *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982). The Supreme Court of Indiana appears to have applied an inconsistent approach in invoking its power to "review and revise" capital sentences. This failure raises a significant federal constitutional question cognizable on habeas review.

No one disputes the authority of Indiana to craft a remedy that incorporates the holding of *Ring v. Arizona*, 536 U.S. 584 (2002), to individuals currently on death row. The Supreme Court of the United States has not required such retroactive application, *see Schriro v. Summerlin*, 542 U.S. 348, 358 (2004), but that determination certainly does not prevent a state court from fashioning a remedial principle of state law that includes such retroactive application. Having made that decision, however, the state court must apply that remedial standard in a way that ensures that the state courts will determine who is to live and who is to die in a principled manner. The rudderless application manifested in the cases decided by the Supreme Court of Indiana raises a serious federal question that ought to be explored in depth by the district court and by this court, if an appeal is made to us in due course.

An examination of the decisions of the Supreme Court of Indiana in *Saylor v. State*, 808 N.E.2d 646 (Ind. 2004), and in *Holmes v. State*, 820 N.E.2d 136 (Ind. 2005), followed by a comparison of those cases with the present case, makes clear the unconstitutional path that Indiana appears to have followed. In *Saylor,* the court articulated a standard that, as a matter of state law, was to govern the fate of those individuals already condemned to death: "[I]t [wa]s not appropriate to execute a person who was convicted and sentenced through a procedure that has now been substantially revised so the same trial today would no longer render the defendant eligible for the death penalty." *Id.* at 647. In reaching this conclusion, the justices relied in part on the fact that Saylor was among a small group of people who would be

> executed despite a jury recommendation to the contrary
> . . . . Currently two other inmates are on death row
> after a judge overruled the jury's recommendation
> against death . . . . There is the instance where the jury

was unable to agree on a recommendation and the death penalty was carried out, and another defendant sentenced in that circumstance remains on death row today. *Holmes v. State*, 671 N.E.2d 841 (Ind. 1996).

*Id.* at 650 (additional citations omitted).

Despite the court's *initial* inclination to see the same injustice in *Saylor* and in *Holmes*, and, presumably, to require the same treatment with respect to the revision of their sentences, the court abandoned that view when *Holmes* came before it for review. Instead, the court determined that Holmes was not entitled to the relief accorded Saylor because *Holmes* did not involve the total absence of a jury recommendation of death but simply a hung jury on that all-important issue.[2] A dissenting Justice recognized, however, that, in light of the standard established in *Saylor*, Holmes' situation was not distinguishable clearly on principled grounds:

> There are the differences in Petitioner's and Saylor's situations that the Court's order identifies, to be sure. But one of the themes of the *Saylor* opinion that comes through loud and clear is the relative uniqueness of Saylor's position—that part of the reason that it would have been improper to execute him was that he was one of only three people on death row whose jury had recommended against death. Petitioner's situation is almost as unique. Indeed, the Saylor opinion identified Petitioner by name as being only one of four people on death row (the others being the three just mentioned) whose juries had not recommended a sentence of death. Put differently, assuming the other

---

[2] The distinction, explained the court, was that, with respect to Holmes, "[t]he jury did not reach a unanimous recommendation on the State's request for a death sentence in the penalty phase of the trial." *Holmes v. State*, 820 N.E.2d 136, 137 (Ind. 2005).

two individuals in the same class as Saylor receive the same relief, Petitioner will be the only person on Indiana's death row whose jury has not recommended a sentence of death.

As to the 2002 amendments to the Indiana death penalty statute, it is true that the statute still authorizes the sentencing judge to impose a death sentence if the jury cannot agree on a sentencing recommendation. But I do not think this package is wrapped tightly enough to say that there is no reasonable possibility that Petitioner is entitled to post-conviction relief. This is because, even though the statute still permits a judge to impose a death sentence in the face of a penalty phase "hung-jury," the statute operates differently than it did prior to the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002). . . .

*Holmes*, 820 N.E.2d at 140 (Sullivan, J., dissenting).

When Mr. Lambert's appeal came before the Supreme Court of Indiana, a majority of the Justices took the view that the standard set forth in *Saylor* did not mandate the same action in *Lambert*, 825 N.E.2d at 1263; in the majority's view, "[t]he circumstances for Lambert are different. His is not a situation where the jury unanimously recommended against the death sentence," *id.* Two members of the court concluded otherwise. Justice Rucker stated that, "although the reasons differ slightly from those in *Saylor*, it is apparent to me that, as a matter of Indiana statutory law, if tried today Lambert could not be sentenced to death under the facts presented in this case." *Id.* at 1268 (Rucker, J., dissenting). Another justice also was troubled by the majority's rejection of Mr. Lambert's prayer for relief: "We have a flawed jury recommendation, and therefore do not know whether, without the erroneously introduced evidence, the jury would have recommended death, as it did

in Lambert's case, or recommended against death, as it did in Saylor's." *Id.* at 1264. Justice Boehm also spoke directly to the supreme court's power to review and revise sentences:

> This Court has the authority to review and revise sentences, but only within the parameters of the sentencing statutes. If this were a direct appeal from a trial conducted under the 2002 law, we therefore could not revise the sentence to impose death. We thus are faced with a situation very similar to that in *Saylor*. We have a defendant sentenced to death through a procedure that would be improper today. Accordingly, Lambert's case, like Saylor's, is not appropriate for death under the current death penalty statute. I would let Lambert proceed to test his claim that a proper penalty phase would provide a recommendation against death.

*Id.* at 1265 (Boehm, J., dissenting). Thus, according to Justice Boehm, because the state supreme court only can impose sentences within the parameters of the sentencing statutes, and because the 2002 statute requires that imposition of the death penalty be decided by an untainted jury recommendation in favor of that penalty, the state supreme court was without authority to impose the death penalty in Mr. Lambert's case.

The Supreme Court of the United States has recognized that "death is different," *Ford v. Wainwright*, 477 U.S. 399, 411 (1986), and that the Eighth Amendment requires safeguards against arbitrariness at both the state trial and appellate levels, *Parker v. Dugger,* 498 U.S. 308, 321 (1991).[3] There is no principle more settled in the law of

---

[3] Specifically, in *Parker v. Dugger*, 498 U.S. 308 (1991), the Court stated:

"If a State has determined that death should be an available
(continued...)

capital punishment than the constitutional standard that a person may not be subjected to the arbitrary, capricious or freakish imposition of the death penalty by state courts. *Gregg v. Georgia*, 428 U.S. 153, 194-95 (1976). As this case comes to us today, it presents a federal constitutional question that ought to be given a full airing in the district court and, in due course, in this court, if either party invokes our appellate jurisdiction. The decisions of the Supreme Court of Indiana in *Saylor*, *Holmes* and *Lambert* strongly suggest that, far from using its authority to review and revise sentences in order to ensure consistency and fairness in the imposition of the death penalty, the state high court's decisions have been the means by which such guarantees have been denied.

Because I believe the district court erred in treating this case as a successive habeas petition and because the petition presents the contention that the Supreme Court of Indiana did not adhere to a basic principle of federal constitutional law, I respectfully dissent.

---

[3] (...continued)

penalty for certain crimes, then it must administer that penalty in a way that can rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." *Spaziano v. Florida*, 468 U.S. 447, 460 (1984). The Constitution prohibits the arbitrary or irrational imposition of the death penalty. *Id.*, at 466-467. We have emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally.

*Id.* at 321 (parallel citations omitted).

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*